### MISSOURI LEE v. THE STATE.

#### No. 4760.    Decided June 5, 1918.

**1.—Local Option—Sufficiency of the Evidence.**

Where, upon trial of a violation of the local option law, the evidence sustained the conviction, there was no reversible error.

**2.—Same—Bills of Exception—Charge of Court.**

Where the bills of exception failed to show that the requested charges of the court were presented to the trial judge and were acted upon by him before he read his charge to the jury, or before the jury retired, they can not be considered on appeal.

**3.—Same—Verdict—Misspelling.**

A mere misspelling of words in the verdict which could not affect the validity of the verdict does not constitute reversible error.

Appeal from the County Court of Smith. Tried below before the Hon. W. R. Castle.

Appeal from a conviction of a violation of the local option law; penalty. a fine of twenty-five dollars and twenty days confinement in the county jail.

The opinion states the case.

*Hanson & Butler,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of illegally making a sale of intoxicating liquor in Smith County after prohibition had been put in force therein, at a time when it was only a misdemeanor, and the lowest punishment assessed.

Appellant contends that the evidence was insufficient to sustain the verdict. This is the only serious question in the case. The evidence tending to show conviction will be briefly stated.

Mr. Hobbs, to whom the sale was alleged to have been made, testified in effect that he had seen Charley Lee, defendant's husband, about a week before he got the whisky and that at that time Chas. told him that he did not then have any whisky, but if he would come back about a week later he could get some. That he went back about a week later when Chas. was not there. That he asked appellant if she had any whisky there. That she said, no, she did not fool with it and that her husband did not have any there, but that Monroe Hill had some out there in an old buggy top, pointing in the direction where the buggy top was. That the whisky cost $2. That he laid $2 on the floor of her house, went out to the buggy top and got one quart of whisky. He said he did not know that she saw him put the money down and that he did not know and could not swear that she got it. "She did tell me she did not fool with the whisky but she had told me where it was."

Mr. Allen testified that he knew appellant and about this time on three different occasions he went to her home and asked her for some whisky. She said she did not have any, but another fellow had some out there under a tin, and each time he went out there and got a pint of whisky and left a dollar in money. That he left the money on the gallery floor near her. She told him it was not her whisky and he did not know whether she got the money he left or not.

Mr. Perdue testified that he knew appellant and about the same time went to her home upon one occasion and asked her if she had some whisky. She said she did not have any there, but Monroe Hill had some out there in the pasture under a tin. He went out there and got a pint and left a dollar under the tin. That she told him it was not her whisky and that he did not know whether she knew he left the money there nor whether she got it.

It was agreed that the prohibition law, as stated above, was in full force and effect as alleged.

The State proved up by her a confession or written statement that she made which was introduced in evidence, and after the preliminary statements necessary to show a proper confession under the law, it was as follows: "I live with my husband, Charley Lee, about seven miles from Tyler on the Mt. Sylvan road. About two weeks ago a white man came to our house and asked me for some whisky, and I told him I did not have anything to do with selling whisky. He asked for my husband and I told him he was not at home. He said he had been selling whisky and he was out. He said my husband had sent him after it; said that my husband told him that he had some. I told him, 'Mr., I don't even

keep it in my house.' I told him I think Chas. has some for his own use, and I told him I would show him where it was, and I told him it was in the pasture, and he went and got a quart and came and laid two dollars on the floor in the back of the house. About two months ago some men came on Sunday morning from toward Tyler and came down to the cow pen where I was and asked where my husband was, and asked if my husband had anything to drink, and I told him he had some there for sickness. They said that my husband sent them there and that it was up in the pasture. I told them, 'I don't fool with no whisky, but that if my husband sent you after it you could get it,' and one of them went and looked for it and found a quart and came back to the house and said that he laid a dollar down and said for me to tell my husband. The man that just came into this office is the man that got the quart and left two dollars. (Signed) Missouri Lee. Signed this 29th day of May, 1917."

She introduced her husband, Chas., who testified he knew Mr. Hobbs and that he did come to his field and ask him if he had any whisky and that he told him that he did not, except some that he kept for his personal use which he had gotten the previous Christmas, and he denied telling him to come back in about a week and he could get some. He denied that he or his wife either had any whisky on hand or had received any. He said that Monroe Hill had been hanging around his place some but that he made him leave. When he made him leave is not stated. Hill was not shown to have been present at any time when Hobbs, Allen or Perdue got the whisky through appellant as they testified.

She testified that Mr. Hobbs was mistaken when he testified that he asked her the price of the whisky and she told him two dollars. She admitted that Mr. Hobbs did come at the time stated by him and wanted to buy whisky; that he kept standing around there, and she told him another fellow, Monroe Hill, had some whisky out there in a buggy top, and pointed out to the buggy top. She denied she knew anything about his laying the two dollars down as Mr. Hobbs had testified. That she had no whisky to sell and was not interested in the sale of it for any other person, and had ordered no whisky. That "We made Monroe Hill leave for I did not want him hanging around there with whisky." And she denied selling any to either Hobbs, Allen or Perdue, and claims she got no money therefor. On cross-examination she admitted making a confession or written statement which the State had proven up and introduced in evidence, copied above. She claimed that at the time she made that statement and signed it that she was excited and confused caused by the officers, "until I don't know whether the written statement speaks the truth or not." That she did not mean to state that Mr. Perdue laid two dollars on the floor and did not remember whether she made any such statement, that if she did the officers had so confused her that she did not know what she was talking about. That it was not true. That she did not see him leave any money at all and never found any after he left. This is in substance the whole of the testimony.

Mr. Branch, in 1 Branch's Ann. P. C., p. 705, cites a large number of cases decided by this court and from them lays down this correct proposition: "When the jury have solved the issues presented in the testimony under a fair and proper charge of the court and have found that defendant is guilty of unlawfully making the sale alleged and the verdict has been approved by the trial judge, whose duty it is to set it aside if not satisfied that defendant has been proven guilty as charged and there is sufficient evidence in the record, if believed, to sustain the verdict, it will not be disturbed on the facts on appeal unless clearly wrong." In this instance we think the evidence was sufficient and that we can not say from the statement of facts that the verdict was "clearly wrong." On the contrary, we think it was supported by the testimony of the State.

Appellant has several bills of exception to the refusal of the court to give her several special charges and one to a paragraph of the court's charge. Neither of her bills comply with the statute in showing in any way that the charges were presented to the judge and acted upon before he read his charge to the jury or before the jury retired. Each of them is deficient in this respect as required by the statute, and all of the decisions thereunder on the point. In addition, each of his bills merely states that he asked the following charge, copying it, and that the court refused to give it. No reason is shown by the charge or the bill why it should have been given. None of the evidence is in any way stated so as to show that the charge was applicable to any phase of the evidence and his bills are indefinite on that account. Again, if the bills had shown that they were presented in such way and at such a time as required by the statute and decisions, neither of them should have been given because it did not state any correct legal proposition on any issue arising in the case in such a way as to make the requested charge applicable or its refusal error.

The judgment rendered recites that the verdict was as follows: "We, the jury, find the defendant, Missouri Lee, guilty as charged in the information, and we assess her fine at twenty-five dollars and twenty days in jail," which is signed by the foreman. Appellant has a bill wherein she claims that the verdict misspelled her given name, spelling it "Mururee," and that the word "assess" was misspelled "assee." She made no objection whatever to the misspelling of either of these words when the verdict was rendered and received by the court. The first time she raised the question was on her motion for new trial. We think there can be no question from the verdict, even if these two words were misspelled as claimed by appellant, that it found the appellant in this case guilty as charged in the information and fixed her punishment at a fine of $25 and twenty days in jail. If at the time the verdict was rendered appellant had then called attention to either of these words if they were misspelled there can be no doubt but that the jury under the direction of the court would have spelled the two words correctly. But in no event does the misspelling of either or both of these words invalidate the

conviction, and the misspelling of either could in no way have misled appellant. Sections 646-647 and cases cited in 1 Branch's Ann. P. C. The judgment will be affirmed.

*Affirmed.*